UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GREGORY LEE, | Case No. 16-14162 |
|     Plaintiff, | Avern Cohn |
| v. | United States District Judge |
| FREEMAN, *et al*, | Stephanie Dawkins Davis<br>United States Magistrate Judge |
|     Defendants.<br>_____/ | |

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 15)**

**I.    PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections (MDOC), filed this civil rights complaint on November 22, 2016. (Dkt. 1). On February 2, 2017, defendants, all employees of MDOC, filed a motion for summary judgment. (Dkt. 15). Plaintiff filed a response, defendants filed a reply, and plaintiff filed a sur-reply. (Dkt. 20, 22, 24). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **DENIED** on the issue of exhaustion of administrative remedies and that the remainder of the motion for summary judgment be determined after the exhaustion issue is decided via bench trial,

1

should that become necessary.

## II. PLAINTIFF'S COMPLAINT

As set forth in plaintiff's complaint, on July 1, 2016, plaintiff was charged with assault on an officer/prison employee. (Dkt. 1, ¶ 11). On August 22, 2016, plaintiff was transported to the MRF[1] control center by CO Lee for the charge. *Id*. at ¶ 12. That morning, while awaiting transport, plaintiff was approached by CO Hofbaurer, who asked plaintiff why he was going to court, to which plaintiff replied, "assault on an officer." *Id*. at ¶¶ 13-14. According to the complaint, Hofbaurer replied "since you like assaulting officers we gone [sic] assault you and see how you like it." *Id*. at ¶ 15. CO Freeman placed the handcuffs on plaintiff and plaintiff says he asked "why are you putting the cuffs on so tight you're supposed to be one of us." *Id*. at ¶ 17. Freeman replied "I am one of the brothers but these white people sign my paycheck. Plus I got 18 months until I retire. Are you going to provide for my family? * * * "Well young brother I got to do what my partner said and do you wrong but I'm man enough to say I'm sorry." *Id*. at ¶¶ 18-19. Plaintiff says that he then asked to speak with Lt. McNiff about having the handcuffs on too tight and the use of the black box. *Id*. at ¶ 20.[2] According to

---

[1] "MRF" is the Macomb Correctional Facility. *See* http://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5355--,00.html.

[2] According to the affidavit of defendant Freeman, a "black box" is an additional restraint restricting arm movement often used when prisoners are to appear in court or if there are safety concerns. (Dkt. 15-5, Pg ID 137).

2

plaintiff, McNiff confirmed that he was not in segregation or a flight risk, so the use of the black box was not necessary but up to the officers. *Id*. at ¶ 21. Plaintiff says he also complained to McNiff that the cuffs were too tight, and that he was experiencing pain. *Id*. at ¶¶ 22, 24. Plaintiff says he stayed in handcuffs for 11 hours. *Id*. ¶ 25.

When plaintiff returned to MRF, he was seen by RN Ravard in the main healthcare building. *Id*. ¶ 26. Shortly thereafter he was seen by RN Radimaker, who told him to submit a healthcare kite for his injuries. *Id*. ¶ 27. Plaintiff was given ice packs and pain pills for three days for his pain and injuries. *Id*. ¶ 28.

On September 3, 2016, plaintiff asked CO Noble for a grievance form, and he refused, saying "we don't like litigators." *Id*. ¶ 29. Noble refused plaintiff his one full hour of recreation for the next five days. *Id*. ¶ 29. According to the complaint, Noble told him that he would lose his break unless he stopped writing grievances and stopped participating in the one against Hofbaurer. Plaintiff then wrote a grievance about losing his recreation time. *Id*. ¶ 30.

Following this incident, plaintiff says he started to receive threats that if he continued to write grievances, he would be rewarded with a "trip to A wing and a knife by C/O King and Noble." *Id*. ¶ 31. While plaintiff was returning from dinner on September 19, 2016, he was selected by King and Noble for a search. *Id*. ¶ 33. They told plaintiff that Sgt. Amalfitano told them to look for a knife.

While Noble was patting plaintiff down, plaintiff says he grabbed plaintiff's genitals and asked "is this a weapon?" *Id*. ¶ 34. Noble also stated that C/Os have killed inmates before and gotten away with it. *Id*. ¶ 35. King said if plaintiff moved, he would get a ticket for assault on an officer. *Id*. ¶ 36. Plaintiff said he was humiliated and degraded and this incident was used to intimidate him into not writing grievances. *Id*. at ¶ 37.

That same evening, King and Amalfitano approached plaintiff's cell door and told him to cuff up while his cell was searched. *Id*. ¶ 38. Plaintiff was placed in an A wing shower and was told "we told you so" by Noble. *Id*. ¶ 40. Ten minutes later, Noble, King, and Amalfitano came into the shower area and showed plaintiff the knife they found in his cell. *Id*. ¶ 41. Plaintiff denied that the knife was his. *Id*. ¶ 42. Amalfitano said "it is now" and all three left the shower area. *Id*. ¶ 43. Plaintiff says he filed a formal complaint against these officers for their "gang mentalities while conducting organized crime in the guise of a prison official." *Id*. ¶ 44.

On September 27, 2016, because of his prior complaints, plaintiff was called into the "bubble area" by Noble, who told him "if you continued to write grievances we'll kill you and say you killed yourself. This is RTP and we'll get away with it. Now try me if you think I'm playing. This is your last warning." *Id*. ¶ 45. Due to these circumstances, plaintiff refused to participate in any complaint

4

or grievance involving MRF, for fear of being killed. *Id*. ¶ 46.

Plaintiff asserts an Eighth Amendment excessive force claim against defendant Freeman for placing the handcuffs on him too tightly and causing wrist injuries, and for forcing plaintiff to have the too tight cuffs on for 11 hours. *Id*. ¶ 54. As to defendant Noble, plaintiff says he violated his First Amendment rights by attempting to and succeeding in thwarting plaintiff from filing grievances and receiving help from an administrative remedy such as the MDOC grievance process. *Id*. ¶ 55. Plaintiff also alleges that Noble used excessive force and violated his Eighth Amendment rights by grabbing plaintiff's genitals. *Id*. Plaintiff also alleges a claim under 42 U.S.C. § 1986 against Freeman, Hofbaurer, Noble, King, and Amalfitano for being deliberately indifferent to plaintiff's rights being violated and the risk each defendant's action posed to plaintiff's health and safety. *Id*. at ¶ 56. Plaintiff also sues all defendants under 42 U.S.C. § 1985 for retaliating against plaintiff. Plaintiff says King, Noble, and Amalfitano retaliated against him for writing grievances and Freeman and Hofbaurer retaliated against him because he was accused of assaulting an officer. *Id*. ¶ 57.

### III. ANALYSIS AND CONCLUSION

   A. <u>Standard of Review</u>

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the

5

movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the

jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due

regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

  B. <u>Exhaustion of Administrative Remedies</u>

    **1.** **The parties' arguments**

According to defendants, a review of plaintiff's complaint and the MDOC Step III Grievance Report reveals that plaintiff did not file any grievance through Step III against defendants Freeman, Hofbauer, Noble, King and Amalfitano for any alleged misconduct at MRF. (Dkt. 15, Ex. 1). Indeed, plaintiff concedes in his complaint that he did not pursue his administrative remedies through Step III of the grievance process, but argues his non-compliance is excused because he believed it to be futile and that he would be killed if he even tried to exhaust his administrative remedies. (Dkt. 1, ¶ 53). Defendants asserts that it is illogical that an MDOC employee would risk everything to kill a prisoner to keep a prisoner from pursuing his administrative remedies. Defendants also assert that this subjective belief is also belied by plaintiff's own actions. When the attempt was made to interview the plaintiff concerning his 'black box' complaints against defendants Hofbauer and Freeman, he "refused to be interviewed and make any

attempt to resolve this grievance." *Id*. at Pg ID 13.  With regards to the allegations against defendants Noble, King and Amalfitano, he was found guilty of the Class I Misconduct of possession of a weapon, underlying his claims against the three defendants, and did not request a rehearing or appeal.  (Dkt. 15, Ex. 3).

Plaintiff was required to continue through each step in the grievance process within the time frame set forth in Policy Directive 03.02.130.  (Dkt. 15, Ex. 2).  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the procedure to be ineffectual or futile.  The Sixth Circuit has consistently held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure.  An argument that it would have been futile to file a grievance does not suffice.  *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (Assertions of futility do not excuse plaintiff from the exhaustion requirement.); *Berkshire v. Sanders*, 2012 WL 4486295, at *5 (W.D. Mich. June 14, 2012), report and recommendation adopted, 2012 WL 4470213 (W.D. Mich. Sept. 27, 2012), aff'd (May 29, 2013).

Plaintiff asserts that he tried to exhaust his administrative remedies but was thwarted by prison officials.  As described in the verified complaint, plaintiff says he attempted to rectify the issue that occurred on August 22, 2016 verbally and then filed a Step I grievance on August 28, 2016.  (Dkt. 1, ¶ 47).  He received a receipt on September 8, 2016.  (Dkt. 1, Ex. 1 Step I Grievance Response).

Plaintiff submitted a kite requesting a Step II grievance form. (Dkt. 1, ¶ 49). On September 19, 2016, plaintiff filed a grievance for the retaliation claim. (Dkt. 1, Ex. F, Step I Grievance Response). On September 22, 2016, plaintiff filed a formal complaint regarding the possession of weapon misconduct. (Dkt. 1, Ex. G, "MDOC Formal Complaint"). Plaintiff says in the complaint that, due to threats being made against plaintiff, he feared continuing in any grievances and it was very probable that such threats would be carried out. (Dkt. 1, ¶ 52). Plaintiff further asserts that the grievance system is futile and not worth dying for to provide exhaustion. (Dkt. 1, Ex. J, MDOC Memorandum re: Grievance Procedures). Plaintiff reiterates these claims in his response to the motion for summary judgment.

### 2. Legal Standards and Analysis

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby*

*County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bears the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

Plaintiff concedes that he did not complete the three-step process outlined in the MDOC grievance procedure. Yet, he claims there is a disputed issue of fact because he was "thwarted" from completing the process based on threats and intimidation by prison officials. Indeed, where administrative remedies have effectively been rendered unavailable, a prisoner may be excused from pursuing them to completion. In *Ross v. Blake*, 136 S.Ct. 1850, 1858-59 (2016), the Supreme Court concluded that if the prisoner is effectively barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required. Specifically, the Court articulated three scenarios under which a prison's grievance procedures may be rendered

12

unavailable:

> As relevant here, there are three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Id*. at 1858-1860.

As explained in *Bennett v. Michigan Dep't of Corr.*, 2017 WL 3208591, at *5 (E.D. Mich. July 24, 2017) where a defendant has submitted MDOC Policy Directive 03.02.130, which sets forth the grievance procedure in clear terms, along with the affidavit of a person with knowledge, who describes the process in detail, a sufficient showing that the grievance procedure is "available" to all MDOC inmates has been made. Here, while defendants do not offer an affidavit describing the grievance procedure, the undersigned similarly concludes that defendants have made an initial showing that the grievance procedure was generally available. (Dkt. 15-3). As further explained in *Bennett*, once a defendant carries the burden of showing that there was a generally available

13

administrative remedy, and that the prisoner did not exhaust that remedy, "the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at *5 (quoting *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014), citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996) ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."); *see also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him....."). Notably, plaintiff does not submit an affidavit in support of his claims that he was thwarted from completing the grievance process, but the Court may consider the statements set forth in his verified complaint for purposes of evaluating whether there is a genuine issue of material fact. *Healthy Advice Networks, LLC v. Contextmedia, Inc.*, 2014 WL 5588444 (S.D. Ohio 2014) ("While a verified complaint based on personal knowledge serves as the equivalent of an opposing affidavit for the purposes of summary judgment, the verified complaint must meet the requirements of Federal Rule of Civil Procedure 56(c)(4), which states that 'an affidavit or declaration used to support or oppose a motion must be made on

personal knowledge, set out the facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'").

While many of the threats plaintiff cites in the verified complaint occurred *before* he filed his Step I grievances, which tends to undermine his position, he does describe specific threats made *after* he received the Step I responses and after he filed his "formal complaint" with the MDOC. As set forth in the complaint, on September 27, 2016, because of his prior complaints, plaintiff was called into the "bubble area" by Noble, who told him "if you continue to write grievances we'll kill you and say you killed yourself. This is RTP and we'll get away with it. Now try me if you think I'm playing. This is your last warning." (Dkt. 1, ¶ 45). Due to these circumstances, plaintiff refused to participate in any complaint or grievance involving MRF, for fear of being killed. *Id*. ¶ 46. In reply, defendants offer evidence that plaintiff continued to submit grievances after the September 27, 2016 threat. (Dkt. 22-2, Affidavit of E. Taylor and grievances dated 10/1/16 and 10/28/16). As plaintiff points out in his sur-reply, this grievances were filed against personnel at MRF *after* plaintiff was transferred to ARF.[3] (Dkt. 24).

The parties' competing stories present a classic case of a material factual issue, precluding summary judgment. For the Court to select one party's version

---

[3] "ARF" is the Gus Harrision Correctional Facility. *See* http://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5359--,00.html

of events would require a credibility determination, which is not permissible in the context of summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986) (When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (The court may not make credibility judgments or weigh the evidence.). In the view of the undersigned, there is a question of fact regarding whether plaintiff was thwarted under *Ross* from exhausting his administrative remedies based on the alleged threats to his personal safety. Thus, this matter will need to resolved via bench trial. *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 787 (E.D. Mich. 2016) (citing *Palmer v. Flore*, 3 F.Supp.3d 632, 636 (E.D. Mich. 2014)) (If material fact issues preclude summary judgment, the exhaustion defense may be tried to the Court under Rule 52(a)(1)); *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (When factual disputes arise regarding the issue of exhaustion, the Sixth Circuit has found that a district court may resolve the disputes in a bench trial).

Given the foregoing conclusions, the undersigned declines to address the merits of plaintiff's constitutional claims until the merits of the preliminary exhaustion issue is resolved. Exhaustion is a preliminary matter that should be

resolved before the Court reaches the merits of the other arguments made by defendants in their motion for summary judgment. *See Mattox v. Edelman*, 2016 WL 398242, at *1 (E.D. Mich. 2016) (Whenever feasible, the Court should decide exhaustion disputes before addressing the merits of the claims.), report and recommendation adopted sub nom. *Mattox v. Pandya*, 2016 WL 945340 (E.D. Mich. Mar. 2016) (additional history omitted) (citing *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014)); *Ayotte v. Stemen*, 2016 WL 5539765, at *5 (E.D. Mich. Aug. 11, 2016), report and recommendation adopted in part, rejected in part, 2016 WL 5027594 (E.D. Mich. Sept. 20, 2016) (same); *Smith v. Schwartz*, 2012 WL 1600559, *3 (S.D. Ill. May 7, 2012) (The rationale behind a judge making a preliminary determination regarding exhaustion is that "[a] jury might decide the merits of a case that should never have gotten to the merits stage because the judge should have found that the prisoner had failed to exhaust his administrative remedies.") (quoting *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)).

IV. **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **DENIED** on the issue of exhaustion of administrative remedies and that the remainder of the motion for summary judgment be determined after the exhaustion issue is decided via bench trial, should that become necessary. Should the Court adopt this recommendation, the

undersigned suggests that counsel be appointed for plaintiff before the bench trial is conducted.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: August 25, 2017                s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on August 25, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Gregory Lee #791018, Ionia Maximum Correctional Facility, 1576 West Bluewater Highway, Ionia, MI 48846.

                                      s/Tammy Hallwood
                                      Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov