UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY LEE

      Plaintiff

v.

FREEMAN, *et al.*,

      Defendants.

_____/

Case No. 16-14162

Avern Cohn
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## BENCH TRIAL ON EXHAUSTION OF ADMINISTRATIVE REMEDIES

## I.   PROCEDURAL HISTORY

Plaintiff, Gregory Lee, a prisoner in the custody of the Michigan Department
of Corrections (MDOC), filed this civil rights complaint on November 22, 2016.
(Dkt. 1). Lee is currently incarcerated at Ionia Correctional Facility but at the time
of the events giving rise to this complaint (August-September 2016), he was
housed at Macomb Regional Correctional Facility (MRF) in New Haven,
Michigan. (Dkt. 40, p. 1). Lee alleges a First Amendment retaliation claim under
42 U.S.C. § 1983 against defendants. He claims that defendants Freeman and
Hofbauer retaliated against him for assaulting a prison employee and deprived him
of his Eighth Amendment right to be free from cruel and unusual punishment by
handcuffing him so tightly that the handcuffs injured his wrists. (Dkt. 40, p. 6).
Lee also alleges that defendants Noble, King, and Amalfitano retaliated against

1

him for filing grievances and a formal complaint by planting a knife in his cell and harassing, threatening and intimidating him into silence during the grievance process. *Id.* Finally, Lee alleges that Noble also retaliated against him and violated his Eighth Amendment rights by squeezing his testicles during a search of his person. *Id.*

On February 1, 2017, defendants moved for summary judgment based on Lee's failure to exhaust administrative remedies. (Dkts. 15, 16). After this matter was fully briefed (Dkts. 20, 22, 23), the undersigned recommended that the Court deny defendants' motion for summary judgment, finding a genuine issue of material fact as to whether Lee was thwarted from completing the exhaustion process. (Dkt. 31). The undersigned also recommended that this issue be resolved via bench trial. *Id.* On September 19, 2017, the Court adopted the undersigned's Recommendations. (Dkt. 33). Shortly thereafter, counsel was assigned to represent Lee. (Dkt. 36). Lee, with the assistance of counsel, filed an amended complaint on December 6, 2017. (Dkt. 40). Defendants filed a second motion for summary judgment on the issue of exhaustion, which was denied by District Judge Avern Cohn. (Dkt. 45, 51).

The Court subsequently referred this matter to the undersigned for a bench trial on the issue of exhaustion of administrative remedies. (Dkt. 53). After a period of limited discovery, which was extended, a bench trial was scheduled for

October 5, 2018. (Dkt. 64). At the final pre-trial conference, the Court was

informed that one of the defendants was unable to attend trial due to an extended

illness. The parties stipulated to adjourn the bench trial. (Dkt. 67). The joint final

pre-trial order was entered on March 25, 2019 and the bench trial held on March

27, 2019. (Dkt. 71, 73). The parties submitted their proposed findings of fact and

conclusions of law on April 10, 2019. (Dkt. 74, 75).[1] This matter is now ready for

report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's claims be **DISMISSED** based on his failure to exhaust his

administrative remedies.

## II. FINDINGS OF FACT

The parties present the current dispute as primarily a contest of credibility,

each arguing that their version of events is more credible and supported by the

objective evidence. Neither party disputes the fact that Lee did not complete the

three-step grievance process or the two step Prison Rape Elimination Act

("PREA") grievance process. Where their positions diverge is on the issue of

---

[1] Lee attaches certain exhibits to his proposed findings of fact and conclusions of law. Lee's exhibits do not necessarily match those admitted by the Court at the bench trial, however. For example, as admitted at trial, Exhibit 1 is a single page document. Lee's Exhibit 1 is five pages. Several exhibits appear to include pages that were not admitted in evidence at trial. The Court has not relied on the exhibits attached to Lee's proposed findings of fact and conclusions of law. Rather, all exhibits admitted at trial are attached to this Report and Recommendation, whether or not they are referenced herein.

whether the defendants' alleged threats of physical violence and harassment thwarted Lee from fully exhausting his administrative remedies.

Lee asserts that he has filed many grievances during his incarceration and is well-familiar with MDOC's three-step grievance process and his ability to file lawsuits against prison employees. (Dkt. 73, Trial Transcript, pp. 5-6, 13-14, 20). Thus, when defendants Freeman and Hofbauer used excessive force on him in August of 2016 (Dkt. 73, p. 6), he attempted to address the issue through that grievance process. (Dkt. 73, p. 6; Trial Exhibit 1). Lee refused to be interviewed for that grievance. (Dkt. 73, p. 33). In early September of 2016, shortly after filing the grievance based on Freeman's and Hofbauer's conduct, Lee says that defendant Noble approached him, "asking about some grievances [he] was writing" and took away his "yard" time, prompting Lee to ask Noble for a grievance form. (Dkt. 73, pp. 8-10). According to Lee, Noble refused to provide him with a grievance form, telling him "to stop filing grievances" and informing him that "they don't like litigators at Macomb" in hopes of preventing Lee "from filing the Step II grievance" or filing a new one. (Dkt. 73, pp. 8-11). Noble testified that he did not recall taking away Lee's yard time but says that it was possible. (Dkt. 73, pp. 50-51). Noble also denies making any statement about not liking litigators or refusing to provide grievance forms. (Dkt. 73, pp. 50-51). Based on Noble's decision to take away his yard time, Lee filed a second

4

grievance. (Dkt. 73, p. 21; Trial Exhibit 2). This grievance was resolved in Lee's

favor in that his improperly taken yard time "was replaced at a later date." (Dkt.

73, pp. 19-21, 38-39).

On September 19, 2016, purportedly based on a "tip" from a known snitch,

defendants Noble and King searched Lee for a weapon but did not find one. Lee

contends that during this search, they reiterated Noble's previous statement, saying

"they don't like litigators" and they threatened that, "if I continue to file a

grievance, I be put on A1, which is the hole for that unit, for possession of a

weapon." (Dkt. 73, pp. 24, 54-58, 60-62, 92-93). During this "shake-down," Lee

says that Noble "grabbed [his] testicle," causing him to "jerk[] away a little bit,"

which he testified was met with more threats:

> Noble checked the pocket, and as he went down lower,
> he grabbed my testicle, and I jerked away like a natural
> reaction. And Officer King told me if I moved again, I
> was gonna go to hole for assaulting an officer. And I
> said, he just grabbed my nuts. He's like, don't move.
> That was the end of the shakedown, and as I was walking
> away, Officer King told me again, you remember what I
> said. You gonna go to A-Wing for possession of a
> weapon. That was the end of that.

(Dkt. 73, p. 27). To corroborate his version of events, Lee presented the testimony

of inmate Steve Caprice Smith, who witnessed the September 19th shake-down

and thought that defendant Noble was "messing with" Lee, i.e., trying to aggravate

Lee or get a reaction out of him. (Dkt. 73, pp. 104-105). Smith testified that

Noble "said he was … fucking somebody up" and that he'd get away with it to Lee during the search. (Dkt. 73, p. 103; Trial Exhibit 12 – Smith's handwritten statement). Defendants point out that Smith could not recall any of the events of September 19, 2016 until his prior statement was read out loud to him, in its entirety. (Dkt. 73, pp. 99-100). Noble denies grabbing Lee's testicles, instead describing Lee as "cooperative" and the entire incident as unremarkable. (Dkt. 73, pp. 62, 75-76). Likewise, King denies that defendant Noble grabbed Lee's testicles. (Dkt. 73, p. 92). The shake-down was admittedly unsuccessful in that "No contraband was recovered… ." (Dkt. 73, p. 62). Lee points out that even though the officers found no weapon on his person and thus, any purported weapon was still "missing," they allowed him to return "back to his cell," which is the only other conceivable place a weapon in his possession might have been. (Dkt. 73, p. 62).

After the shake-down, Lee wrote another grievance under the Prison Rape Elimination Act Grievance Process (a "PREA grievance"), placing it in an envelope, and sliding it out in the hall per usual procedure. (Dkt. 73, p. 26; Trial Exhibit 3; Trial Exhibit 4). According to Lee, "Maybe 30 minutes" later, Noble, King, and Amalfitano came to his cell, handcuffed him, transported him to the shower, and started searching his cell for the supposed knife they had not found on his person. (Dkt. 73, pp. 26-27, 80-82, 92). During this search of Lee's cell,

6

Noble found a knife in a winter glove and all defendants denied that the knife was planted. (Dkt. 73, pp. 67-68, 82-85, 96).

After finding the knife, defendants sent Lee to the "A-wing," i.e., solitary confinement, where he remained until September 27, 2016. (Dkt. 73, pp. 28, 68-69, 87-88). Lee was moved from the A-wing on September 27, 2016. (Dkt. 73, p. 69). On his way back to his cell, Lee says Noble gave him what he labeled as his "last warning":

> [A]nd Officer Noble handed me a pass for the control center, and I grabbed the pass, and as I was grabbing the pass he told me -- told me, stop writing grievances, kept writing grievances, they'd kill me and because it was RTP they'd get away with it. He told me that was my last warning, you're not getting another warning.

(Dkt. 73, p. 31). Noble's reference to "RTP" was to the Residential Treatment Program, an elevated level of care for seriously mentally ill inmates. Lee testified that the reference to RTP was important "because like 75 percent of the guys that's (sic) in the program (sic) because of attempted suicide," so defendants could make his death look like a suicide. (Dkt. 73, p. 25). Noble denies threatening Lee on that date and testified that Lee "approached" him, "apologized" for filing grievances against him, and told him "that he's going to take all the grievances back, that he was sorry." (Dkt. 73, p. 70). Noble also disagreed that Lee's apology could have been a consequence of the death threat Lee claims Noble made just a week earlier. (Dkt. 73, p. 72).

Notably, these interactions between Noble and Lee took place during a period in which Noble had been instructed to avoid contact with Lee because of the PREA grievance Lee had filed. And Noble was aware of the grievance at the time. (Dkt. 73, pp. 69-71). Less than two weeks later, Lee purportedly tried to hang himself and Noble was the one who cut him down. (Dkt. 73, p. 72). After what he characterizes as Noble's "last warning," i.e., that if he "kept writing grievances, they'd kill me and … get away with it," Lee says that he did not use the MDOC's grievance process or pursue any other remedies until he was transferred away from MRF on October 10, 2019 and, as a result, was out of Noble's, King's, and Amalfitano's reach. (Dkt. 73, pp. 31, 35). Lee says he did not use the MDOC's grievance process after the "last warning":

> Because I was threatened. My life was threatened, and I felt that – they threatened to take my yard, they got away with it; they threatened to put me in the hole for a night, they got away with it; they threatened to kill me, I wasn't trying to take that risk, man. I'm doing a lot of time. I wasn't willing to take that risk.

(Dkt. 73, p. 37). Lee says that once he was transferred to another facility and felt safe again, he returned to filing grievances. (Dkt. 73, pp. 35-36; Trial Exhibit F).

## III. CONCLUSIONS OF LAW

### A. Legal Standards for Exhaustion

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if the plaintiff complied with the applicable grievance procedure and defendants

9

bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

B.    Availability of Exhaustion

There are two grievance procedures applicable to Lee's claims. Most grievances must be exhausted using the three-step grievance procedure found in Policy Directive 03.02.130 entitled "Prisoner/Parolee Grievances."   In PD 03.02.130, there are four stages to the grievance process that a prisoner must follow before seeking judicial intervention, each with specific time limits. (Dkt. 15-3, Ex. 2, MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)).[2] First, the prisoner must attempt to verbally resolve

---

[2] The parties did not move for admission of PD 03.02.130 at trial, but it is contained in the record in conjunction with the summary judgment briefing.

the issue with the staff member(s) involved within two business days of becoming

aware of a grievable issue. *Id.* ¶ P. If the issue is not resolved, the prisoner may

then file a Step I grievance, which must be accomplished within five business days

of the attempted verbal resolution. *Id.* ¶¶ P, V. If the prisoner is not satisfied with

the Step I outcome, or he does not receive a timely response, he must file a Step II

appeal within 10 business days of response, or if, no response was received, within

10 business days of when the response was due. *Id.* ¶ BB. If the inmate is still not

satisfied with the result, he must then file a Step III appeal within 10 business days

of receiving the response, or if no response is provided, within 10 business days of

when it was due. The Step III response ends the administrative process. *Id.* ¶ FF.

For grievances involving sexual assault, another procedure applies. As set

forth in Policy Directive 03.03.140 (9/15/2015), effective 04/24/2017 (Trial

Exhibit 18),[3] the PREA grievance process is a two-step process that allows

---

[3] While this version of PD 03.03.140 became effective after the events that are the
subject of this lawsuit occurred, this is the version of the policy admitted at the bench trial.
There was an earlier version in effect, which appears to be substantively similar. As explained in
*Does 1-12 v. Michigan Dep't of Corr.*, 2018 WL 5786199, at *3 (E.D. Mich. Nov. 5, 2018), in
April 2016, MDOC issued Director's Office Memorandum ("DOM") 2016-29 establishing a
two-step "PREA grievance process." Under this process, an inmate "may file a PREA grievance
at any time by submitting a completed PREA Prisoner Grievance Form." *Id.* After filing at Step
I, the PREA coordinator or inspector must provide a written response within 60 days unless an
extension is granted. *Id.* An inmate may file a Step II appeal if he does not receive a timely
response at Step I or is unsatisfied with the response received. *Id.* "Any grievance containing
issues other than sexual abuse shall be returned to the prisoner with instructions to process the
prisoner's non-PREA issues in accordance with PD 03.02.130 'Prisoner/Parolee Grievances.'"
*Id.* An inmate's administrative remedies are exhausted through the PREA grievance process
when filed through both steps of the process. *Id.* The PREA grievance process was
implemented "effective immediately." *Id.*

11

prisoners to grieve allegations of sexual abuse. (Trial Exhibit 18, p. 5, ¶ EE). A prisoner may file a grievance at Step I and may appeal the Step I decision to Step II. *Id.* The Step II decision is the final decision on the merits. *Id.* The PREA grievance coordinator will ensure that a written response is provided to the prisoner within 60 days of the receipt of the Step I PREA grievance. (Trial Exhibit 18, p. 6, ¶ KK). Prisoners may appeal to Step II if the Step I response is untimely or not satisfactory. (Trial Exhibit 18, ¶ LL). However, this policy directive does not provide a deadline for a Step II appeal.

Where administrative remedies have effectively been rendered unavailable, a prisoner may be excused from pursuing them to completion. In *Ross v. Blake*, 136 S.Ct. 1850, 1858-59 (2016), the Supreme Court concluded that if the prisoner is effectively barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required. Specifically, the Court articulated three scenarios under which a prison's grievance procedures may be rendered unavailable:

> As relevant here, there are three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a

> grievance process is rendered unavailable when prison
> administrators thwart inmates from taking advantage of it
> through machination, misrepresentation, or intimidation.

*Id.* at 1858-1860.

Here, in the view of the undersigned, even if Lee's allegations of threats and

intimidation are entirely true, he cannot show that such threats or fears of

retaliation prevented him from completing the three-step grievance process or the

PREA grievance process. This is so because Lee makes it clear that once he

transferred to another facility on October 10, 2016, he no longer feared retaliation

and was fully capable of participating in the grievance process. With respect to

grievance MRF 60901701017B, which involved alleged retaliation by Hofbauer

and Freeman, the Step I response was noted to be signed and reviewed on

September 30, 2016. (Trial Exhibit 1).[4] In addition, it was noted to be returned to

Lee on September 30, 2016. *Id.* Under PD 03.02.130, Lee's Step II appeal would

have been due 10 business days later, or October 14, 2016, *after* Lee was

transferred to ARF and admits that he longer feared pursuing the grievance

process. Similarly, the Step I response to MRF 201609185217A, in which Lee

alleged that the knife was planted by defendants, is noted to have been signed on

October 17, 2016, reviewed on October 24, 2016, and returned to Lee on October

---

[4] Neither party sought to admit into evidence the Step I response to this grievance.

24, 2016. (Trial Exhibit 4).[5] Accordingly, Lee's Step II appeal would have been due well after he was transferred to ARF.

As to Lee's PREA grievance, the Step I response is noted to have been signed on September 28, 2016 and reviewed on October 14, 2016. (Trial Exhibit 3).[6] There is no date noted as to when it was returned to Lee, but based on the pattern with his other grievances, the Court can reasonably infer that it would not have been returned to him any earlier than October 14, 2016, the date on which it was reviewed. While there is no deadline set forth in PD 03.03.140 for filing a Step II appeal,[7] the time for doing so must have been *after* October 14, 2016, when Lee was housed at ARF and already felt safe to file grievances, even grievances relating to events that occurred at MRF. (*See* Dkt. 74, Plaintiff's Proposed Findings of Fact and Conclusions of Law, p. 12, citing Trial Exhibit F; Dkt. 73, pp.

---

[5] Again, neither party sought to admit into evidence the Step I response to this grievance.

[6] Neither party sought to admit into evidence any responses to Lee's PREA grievance.

[7] More specific procedures and deadlines can likely be found in the Director's Operating Memorandum (DOM) 2017-23, referred to on the first page of PD 03.03.140. (Trial Exhibit 18, p. 1). As explained in *Miller v. Klee*, 2018 WL 1354473, at *10 (E.D. Mich. Feb. 23, 2018), report and recommendation adopted, 2018 WL 1326382 (E.D. Mich. Mar. 15, 2018), under DOM 2017-23, a prisoner has 10 calendar days to appeal the Step I PREA grievance response. However, when a prisoner files an "emergency" PREA grievance, there is an "emergency" response, "apparently in addition to the notice of Sexual Abuse and Sexual Harassment Investigative Findings and Action." *Id.* It is not clear from this record whether the response dated October 14, 2016 was an "emergency" response or the full notice of investigative findings. In any event, on this record, Lee's Step II PREA appeal could not have been be due any earlier than 10 calendar days from October 14, 2016.

14

35-36). For these reasons, the undersigned finds that Lee was not thwarted from completing any of the grievances procedures applicable to his claims and defendants have met their burden of proving nonexhaustion.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's claims be **DISMISSED** based on his failure to exhaust his administrative remedies.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local

Rule 72.1(d). The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date: July 31, 2019                          s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on July 31, 2019, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

# EXHIBIT A

MICHIGAN DEPARTMENT OF CORRECTIONS
**CLASS I MISCONDUCT HEARING REPORT**

CSJ-240B
Rev. 10/10

| Prisoner Number | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| **791018** | **Lee** | **MRF** | **7-22B** | **09/19/2016** |

Charge(s)
**Possession of a Weapon**

If Charge Changed by Hearing Officer

Plea
☐ Guilty   ☒ Not Guilty

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

### EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT

Prisoner present. Prisoner states he is not guilty. HI summary read aloud. Photo reviewed with prisoner. Contraband removal record reviewed. Psychiatric Treatment Review read. To be labeled as confidential as this is a health record. Prisoner had nothing further when asked.
All statements one page each unless otherwise noted.

### REASONS FOR FINDINGS

Per PD 03.03.105 Possession of a Weapon is "Unauthorized possession of a piece, strip or chunk of hard material which could be used as a weapon or in the creation of a weapon.

The Misconduct report is detailed, makes sense is supported by photo, and is found credible and convincing. A prisoner is presumed to be responsible for items found in his area of control, even if he is not in the area at the time of the search. The burden of proof for rebutting this presumption is on the prisoner. In this case prisoner had failed to rebut the presumption. I find prisoner Lee had in his locker, thus in his possession, a 6" piece of steel sharpened to a point on one end. This is a prisoner made weapon and was in the possession of Lee. The charges are sustained.

Findings, sanction and dates discussed with prisoner.

### PROPERTY DISPOSITION (for contraband see PD 04.07.112)

### FINDINGS

| | | | | | |
|---|---|---|---|---|---|
| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | <u>029</u> |
| Charge No. 2 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | |

### DISPOSITION (select one or more) (Toplock & LOP Sanctions End at 6:00 am)

| | Begins | Ends | | |
|---|---|---|---|---|
| ____ Days of Detention | | | Days Credit | ____ |
| ____ Days Top Lock | | | Hours Extra Duty | ____ |
| **30** Days Loss of Privileges | **01/25/2017** | **02/24/2017** | $ Restitution | ____ |

| Misconduct Hearing Report personally handed to Prisoner by Hearing Officer on this date: _____ (Check if Applies) ☐ | Hearing Report given to Staff Member by Hearing Officer for Delivery to Prisoner this date: **9/27/2016** (Check if Applies) ☒ |
|---|---|
| Date of Hearing **09/27/2016** | Name of Staff Member   **Bridges** |

| Hearing Officer's Name | Hearing Officer's Signature | Date |
|---|---|---|
| **M Szappan 0056** | *M. Szappan* | **09/27/2016** |

DISTRIBUTION  ☐ Record Office   ☐ Central Office File   ☐ Prisoner   ☐ Counselor File   ☐ Hearing Investigator

DEFENDANT'S EXHIBIT 1
PENGAD-Bayonne, N. J.

MICHIGAN DEPARTMENT OF CORRECTIONS
**MISCONDUCT REPORT**

CSJ-228
10/10 4835-3228

| Prisoner Number: 1018 | Prisoner Name: LEE | Facility Code: MRF | Lock: 7-71-T | Violation Date: 9/19/2016 |
|---|---|---|---|---|

| Time and Place of Violation: 1900 HOUSING UNIT SEVEN, CELL 71 | Contraband Removal Record Provided to Prisoner? ☒ Yes   Date   9/19/2016      ☐ N/A |
|---|---|

Misconduct Class: ☒ I  ☐ II  ☐ III    Charge(s): Possesion of a Weapon

Describe Violation (If contraband involved, describe in detail, identify any other employee witnesses):
While conducting a cell search of cell 7-71, I found a six inch piece of metal that has been sharpened to a point. This piece of metal has a handle fashioned out of a cloth material. This weapon was found inside a glove that was hidden in the locker marked "T". The top locker is Prisoner Lee 791018 area of control.

See attached photo.

Prisoner LEE 791018 has been identified by frequent contact and housing unit seven master count boards.

| Reporting Staff Member's Name (Print) NOBLE | Reporting Staff Member's Signature Noble | Date and Time Written 2000 09/19/2016 |
|---|---|---|

## REVIEW

Location/Verification/Condition of Evidence:

Elevated to Class I at review? ☒ No  ☐ Yes    If "yes", explain reason:

### COMPLETE THIS SECTION ONLY FOR REVIEW OF CLASS I MISCONDUCT

Status Pending Hearing: ☐ Bond  ☒ Non-Bond List  ☐ Segregation  ☐ Confinement to Cell/Room  ☐ Other
Reason if Non-Bond:    ☐ Bond Revoked (must give reason)

| Date and Time Given this Status: 09.19.2016   2030 | Who Notified in Housing Unit of Status: King |
|---|---|

| Hearing Investigator Requested? ☒ No ☐ Yes | Witnesses Requested? ☒ No ☐ Yes If yes, list: |
|---|---|

Relevant Documents Requested? ☒ No ☐ Yes
If yes, list:

| Additional Comments: | Prisoner Waives 24 Hour Notice of Hearing? ☐ No ☒ Yes Hearing Date: 09.20.2016 |
|---|---|

| Reviewing Officer's Name (Print) Sgt Amagrano | Reviewing Officer's Signature Sgt. Amgliro | Review Date and Time 09.19.2016   2030 |
|---|---|---|

I have received a copy of this report. My signature does not necessarily mean that I agree with the report.
☐ Prisoner refused to sign. Copy given to prisoner.

Prisoner's Signature    Date
Prisoner behind Closed Door could not sign.

### WAIVER OF CLASS II OR III HEARING

| I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed. | Prisoner's Signature | Date |
|---|---|---|

### SANCTIONS IMPOSED (Hearing Investigator enters begin and end dates for Class II misconducts)

| _____ Days Toplock | Begins: _____ | Ends: _____ | ☐ Counseling/Reprimand (Class III only) |
|---|---|---|---|
| _____ Days Loss of Privileges | Begins: _____ | Ends: _____ | ☐ $ _____ Restitution (Class II only) |
| _____ Hours Extra Duty | Begins: _____ | Ends: _____ | |

Property Disposition If Applicable:

| Employee Accepting Plea and Imposing Sanction (Print) | Employee's Signature | Date |
|---|---|---|

| Hearing Investigator's Name (Print) | Hearing Investigator's Signature | Date |
|---|---|---|

Distribution: Prisoner; Counselor File; Record Office File (Class I and II); Central Office File (Class I); Hearing Investigator (Class I & Class II)

MICHIGAN DEPARTMENT OF CORRECTIONS

CAJ-681
REV. 2/90
4835-0681

## HEARING INVESTIGATION REPORT

| Number: | Name: | Date Seen: | Time Seen: |
|---|---|---|---|
| 791018 | LEE | 9/26/2016 | |

PRISONER'S STATEMENT: Prisoner plead not guilty to the charge. He had nothing futher to add

WITNESSES REQUESTED: ☐ Yes  ☒ No

1. _____   2. _____
3. _____   4. _____

QUESTIONS TO STAFF WITNESSES: _____

| Signature: | Date: |
|---|---|
| | 9/26/2016 |

# LEE

PRISONER NAME

## 791018

M.D.O.C. NUMBER

## 7-71-T

LOCK LOCATION

# INSIDE A GLOVE IN HIS LOCKER

LOCATION FOUND

## 09/19/16

DATE FOUND ON

## 1900

TIME FOUND

## C/O NOBLE

FOUND BY



MICHIGAN DEPARTMENT OF CORRECTIONS
**CONTRABAND REMOVAL RECORD**

4835-3284
CSJ-284 12/01

| Date: 9/19/16 | Time: 1915 | Staff Member's Name: Noble | | Badge No: |
|---|---|---|---|---|
| Prisoner Name: Lee | | Prisoner Number: 791018 | Lock: 7-71-T | Facility: MRF |

Location Contraband Found: Inside   Locker   Marked  "T".

| ITEM | DESCRIPTION AND REASON FOR CONFISCATION (DESCRIBE FULLY): |
|---|---|
| 1 | One Piece of Metal approximetley 6 inchs in length. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| ☑ SECURED IN   OR   ☐ TURNED OVER TO: Captains contraband Locker | DATE: 9/19/16 | TIME: 9-19-16 |
|---|---|---|

FOR

☐ HEARING   OR   ☐ INSPECTION

☐ RETURNED TO PRISONER AFTER INSPECTION & WITHOUT ACTION TAKEN | DATE | TIME

PRISONER - PRINT NAME: | SIGNATURE:

DISTRIBUTION:   White - File Copy;     Canary - Prisoner;     Pink - With Contraband;     Goldenrod - Attached to NOI/Misconduct Report

## *PSYCHIATARIC TREATMENT TEAM MISCONDUCT REVIEW*

Prisoner Name:  LEE                    Number:791018

Nature of Alleged Misconduct:

| POSS. OF A WEAPON |
|---|
| |
| |
| |
| |

Reviewed by:Alfred Taylor LMSW              Date:9/23/16
            (Treatment Team Member)

### Findings/Recommendations:  (check one of the following)

A. ☒  Patient/prisoner appears to have been responsible for his behavior at or near the time of the alleged misconduct. (Complete following section and forward to the Hearing investigator.)

B. ☐  Patient/prisoner was not responsible for his behavior at the time of the alleged misconduct.  ( Forward this review to the Hearing Investigator. Do not complete the following section.)

          Comments:

---

**ONE OF THE FOLLOWING MUST BE CHECKED IF "A" ABOVE IS CHECKED:**

☒      Appropriate health care **CANNOT** be provided to this prisoner in punitive segregation.
☐  Appropriate health care **CAN** be provided to this prisoner in punitive segregation. However the following conditions must be met:  *(specify)*

*Summary completed on:92316(date) by: Alfred Taylor LMSW*

**Michigan Department of Corrections**
**Offender Callout Management System**
**Offender Restriction Filter Report**

Report Date: 9/26/2016

| Number | Begin Date | End Date | Restriction | Dept | Source | Type | Originator | Unit | Location Code |
|---|---|---|---|---|---|---|---|---|---|
| 791018 | 05/09/2016 | 05/19/2016 | (DET) | Hearings Investigation | Class I | 008 | | 01 | IBC |
| 791018 | 05/16/2016 | 06/15/2016 | (LOP) | Hearings Investigation | Class I | 008 | | 01 | IBC |
| 791018 | 05/16/2016 | 05/23/2016 | (SB) | Housing Unit A/1 | | | | 01 | IBC |
| 791018 | 05/19/2016 | 05/29/2016 | (DET) | Hearings Investigation | Class I | 008 | | 01 | IBC |
| 791018 | 06/15/2016 | 07/15/2016 | (LOP) | Hearings Investigation | Class I | 008 | | 01 | IBC |
| 791018 | 06/24/2016 | 07/01/2016 | (SB) | Housing Unit A/1 | | | | 01 | IBC |
| 791018 | 07/15/2016 | 08/14/2016 | (LOP) | Hearings Investigation | Class I | 008 | | 01 | IBC |
| 791018 | 07/31/2016 | 08/06/2016 | (SB) | Housing Unit A/1 | | | | 01 | IBC |
| 791018 | 08/14/2016 | 08/17/2016 | (LOP) | Hearings Investigation | Class II | 426 | | 01 | IBC |
| 791018 | 08/17/2016 | 08/24/2016 | (LOP) | Hearings Investigation | Class II | 420 | | 08 | IBC |
| 791018 | 08/24/2016 | 09/23/2016 | (LOP) | Hearings Investigation | Class II | 423 | | 08 | IBC |
| 791018 | 09/23/2016 | 10/23/2016 | (LOP) | Hearings Investigation | Class I | 030 | | 01 | IBC |
| 791018 | 10/23/2016 | 11/22/2016 | (LOP) | Hearings Investigation | Class I | 055 | | 01 | IBC |
| 791018 | 11/22/2016 | 11/24/2016 | (LOP) | Classification | Class II | 426 | | HU#7 | MRF |
| 791018 | 11/24/2016 | 12/09/2016 | (LOP) | Classification | Class I | 012 | | HU#7 | MRF |
| 791018 | 12/09/2016 | 12/29/2016 | (LOP) | Classification | Class II | 426 | | HU#7 | MRF |
| 791018 | 12/29/2016 | 01/23/2017 | (LOP) | Classification | Class I | 014 | | HU#7 | MRF |
| 791018 | 01/23/2017 | 01/25/2017 | (LOP) | Classification | Class II | 420/426 | | HU#7 | MRF |

Offender Restriction Filter Records:     52

**Michigan Department of Corrections**
**Offender Callout Management System**
**Offender Restriction Filter Report**

Report Date:  9/26/2016

| Number | Begin Date | End Date | Restriction | Dept | Source | Type | Originator | Unit | Location Code |
|---|---|---|---|---|---|---|---|---|---|
| 791018 | 12/05/2014 | 12/08/2014 | (LOP) | Housing Unit 3 South | Class III | VOPR 2 | | 3 Officer Stat | RGC |
| 791018 | 12/08/2014 | 12/13/2014 | (LOP) | Housing Unit 3 South | Class III | TOOP | | 3 Officer Stat | RGC |
| 791018 | 12/18/2014 | 12/25/2014 | (LOP) | Housing Unit 3 South | Class III | TOOP | | 3 Officer Stat | RGC |
| 791018 | 12/20/2014 | 12/27/2014 | (LOP) | Housing Unit 3 South | Class III | Excessive Noise | | South Off. St | RGC |
| 791018 | 12/27/2014 | 12/30/2014 | (LOP) | Hearings Investigation | Class II | 437 | MIHM , KYLE | South Off. St | RGC |
| 791018 | 12/30/2014 | 01/19/2015 | (LOP) | Hearings Investigation | Class I | 012 | OWEN , SCOTT | South Off. St | RGC |
| 791018 | 01/18/2015 | 02/02/2015 | (LOP) | Housing Unit 1 North | Class III | noise | | 1 Officer Stat | RGC |
| 791018 | 01/18/2015 | 01/25/2015 | (SB) | ADW Housing | | | MORGAN , SAMUEL | 600 | SRF |
| 791018 | 01/27/2015 | 02/28/2015 | (PH) | Housing Unit F/6 | | | METZGER , GERALD | 600 | SRF |
| 791018 | 02/02/2015 | 02/12/2015 | (LOP) | Housing Unit 1 North | Class III | T.O.O.P | | 1 Officer Stat | RGC |
| 791018 | 02/12/2015 | 03/01/2015 | (LOP) | Hearings Investigation | Class I | 012 | DUNCAN , JASON | South Off. St | RGC |
| 791018 | 02/25/2015 | 03/04/2015 | (SB) | ADW Housing | | | | 600 | SRF |
| 791018 | 04/02/2015 | 05/02/2015 | (LOP) | Hearings Investigation | Class I | 057, 036 | | 1200 | SRF |
| 791018 | 04/09/2015 | 04/29/2015 | (DET) | Hearings Investigation | Class I | 003, 029 | | Seg | SRF |
| 791018 | 05/02/2015 | 07/01/2015 | (LOP) | Hearings Investigation | Class I | 003, 029 | | Seg | SRF |
| 791018 | 05/03/2015 | 05/10/2015 | (SB) | Deputy Warden | | | | 05 | IBC |
| 791018 | 05/10/2015 | 05/24/2015 | (LOP) | Hearings Investigation | Class II | 423 | | 05 | IBC |
| 791018 | 06/02/2015 | 06/09/2015 | (SB) | Deputy Warden | | | | 05 | IBC |
| 791018 | 07/02/2015 | 07/06/2015 | (LOP) | Deputy Warden | Class III | TOOP | | 05 | IBC |
| 791018 | 07/07/2015 | 07/14/2015 | (LOP) | Deputy Warden | Class III | TOOP | | 05 | IBC |
| 791018 | 07/10/2015 | 07/17/2015 | (SB) | Deputy Warden | | | | 05 | IBC |
| 791018 | 07/18/2015 | 07/22/2015 | (LOP) | Hearings Investigation | Class II | 423 | | 05 | IBC |
| 791018 | 10/16/2015 | 10/26/2015 | (DET) | Hearings Investigation | Class I | 029 | | 08 | IBC |
| 791018 | 10/16/2015 | 11/15/2015 | (LOP) | Hearings Investigation | Class I | 029 | | 08 | IBC |
| 791018 | 10/26/2015 | 11/05/2015 | (DET) | Hearings Investigation | Class I | 012 | | 08 | IBC |
| 791018 | 11/14/2015 | 11/21/2015 | (SB) | Housing Unit A/1 | | | | 01 | IBC |
| 791018 | 11/15/2015 | 12/15/2015 | (LOP) | Hearings Investigation | Class I | 012 | | 08 | IBC |
| 791018 | 12/31/2015 | 01/07/2016 | (LOP) | Hearings Investigation | Class II | 426 | | 01 | IBC |
| 791018 | 02/13/2016 | 03/04/2016 | (LOP) | Hearings Investigation | Class II | 420 | | 01 | IBC |
| 791018 | 02/24/2016 | 03/05/2016 | (DET) | Hearings Investigation | Class I | 012 | | 01 | IBC |
| 791018 | 02/25/2016 | 03/26/2016 | (LOP) | Hearings Investigation | Class I | 012 | | 01 | IBC |
| 791018 | 03/14/2016 | 03/21/2016 | (SB) | Housing Unit A/1 | | | | 01 | IBC |
| 791018 | 04/16/2016 | 05/16/2016 | (LOP) | Hearings Investigation | Class II | 426 | | 01 | IBC |
| 791018 | 04/29/2016 | 05/09/2016 | (DET) | Hearings Investigation | Class I | 008 | | 01 | IBC |

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

GREGORY LEE #791018,

      Plaintiffs,                  NO. 2:16-cv-14162

v                          HON. AVERN COHN

PAUL FREEMAN, et al.,        MAG. STEPHANIE DAWKINS
                                DAVIS

      Defendants.

---

| | |
|---|---|
| Gregory Lee #791018 | David Hoort (P28492) |
| *In Pro Per* | Assistant Attorney General |
| Bellamy Creek Correctional Facility | Attorney for MDOC Defendants |
| 1727 W. Bluewater Hwy. | MI Department of Attorney General |
| Ionia, MI 48846 | Civil Litigation, Employment & |
| | Elections Division |
| | P.O. Box 30736 |
| | Lansing, MI 48909 |
| | (517) 373-6434 |

---

### AFFIDAVIT FOR STEP III GRIEVANCE REPORT

I, Carolyn Nelson, Departmental Technician, hereby certify that the attached MDOC Prisoner Step III Grievance Report is a true and accurate copy of the report generated for Gregory Lee #791018 from the Michigan Department of Corrections database that tracks all prisoner/parolee grievances filed at Step III. For grievances not checked in the last column, the grievance has been received but a response has not been completed as of the date of the report.

*Carolyn Nelson*

Carolyn Nelson, Dept. Technician

Subscribed and sworn to before me, a Notary Public,

on the 4 day of January, 2017

*Nicole J. Willson*

Nicole J. Willson - Notary Public

NICOLE J WILLSON
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF IONIA
My Commission Expires August 24, 2017
Acting in the County of Ingham

DEFENDANT'S
EXHIBIT

D



# MDOC Prisoner Step III Grievance Report

**May 2009 to Present**

**Inmate Number**   *791018*   **Last Name**   *Lee*          **First Name**   *Gregory*

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| ▬▬▬▬ | | 12E | 3 | 5/2/2016 | ☐ | ☐ | ☐ | ☑ | ☑ | 9/14/2016 |
| **Notes:** | | | | | | | | | | |
| 6/23/2016 | IBC-16-04-0984-27A | 27A | 3 | 4/27/2016 | ☐ | ☐ | ☐ | ☑ | ☑ | 6/30/2016 |
| **Notes:** | | | | | | | | | | |
| 6/23/2016 | IBC-16-04-0944-17Z | 17Z | 3 | 4/20/2016 | ☐ | ☐ | ☑ | ☐ | ☑ | 6/30/2016 |
| **Notes:** | | | | | | | | | | |
| 6/23/2016 | IBC-16-05-1062-17Z | 17Z | 3 | 5/4/2016 | ☐ | ☐ | ☑ | ☐ | ☑ | 6/30/2016 |
| **Notes:** | | | | | | | | | | |



# MDOC Prisoner Step III Grievance Report

### May 2009 to Present

**Inmate Number** 791018 **Last Name** Lee **First Name** Gregory

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/23/2016 | IBC-16-04-0958-17Z | 17Z | 3 | 4/22/2016 | ☐ | ☐ | ☑ | ☐ | ☑ | 6/30/2016 |

**Notes:**

| 6/23/2016 | IBC-16-05-1052-17Z | 17Z | 3 | 5/3/2016 | ☐ | ☐ | ☑ | ☐ | ☑ | 6/30/2016 |

**Notes:**

| 5/13/2016 | IBC-16-04-0945-27a | 27a | 3 | 4/20/2016 | ☐ | ☐ | ☐ | ☑ | ☑ | 5/24/2016 |

**Notes:**

| 12/10/2015 | IBC-15-10-2932-14z | 14z | 3 | 10/29/2015 | ☐ | ☐ | ☑ | ☐ | ☑ | 1/29/2016 |

**Notes:**

# EXHIBIT E

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I _10-01-16_    Grievance Identifier: M R F | 1 6 | 1 0 | 0 | 1 8 6 | 2 1 | 1 7 R

| Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. | | | | | |
|---|---|---|---|---|---|
| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
| GREGORY LEE | 791018 | MRF | 7-22 | 9/23/16 | 9/25/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _9/24 and 9/25_
If none, explain why. I attempted to talk to Sgt. Amalfitano twice 9/24 and 9/25
but he ignored me and continued on his rounds,

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance may be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On Friday 9-23-16 @ approx,
4:00 pm while cells 15 and 18 were being prepared to ride out, C/o Noble
told me while he was walking down the hallway, that he and his homeboys
were going to get me rode out because I write grievances. His last statement
was "Hairston's going to side with us before he sides with you". These
statements were made with the intent to retaliate against this
grievant for exercising his first amendment right to utilize protected
conduct, This behavior is in violation of P.D.03.03.130(I)(6)which
prohibits prison officials from retaliating against a prisoner who files
complaints.

Grievant's Signature

---

RESPONSE (Grievant Interviewed?  ☐ Yes  ☑ No    If No, give explanation. If resolved, explain resolution.)

(SEE ATTACHED)

Respondent's Signature                          10/17/16          Reviewer's Signature                          10/18/16
KLIMOWICZ                                        Date             JENKINS-GRANT                                 Date
Respondent's Name (Print)    Working Title    ARUM    Reviewer's Name (Print)    Working Title

| Date Returned to Grievant: 10-20-16 | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature |
|---|---|---|

DISTRIBUTION:  White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant



DEFENDANT'S EXHIBIT
E

# EXHIBIT F

172

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

#2079

Date Received at Step I  11/7/16  Grievance Identifier: ___ ARF 116 110207 901172

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| GREGORY LEE | 791018 | ARF | 4-240 | 9-7-16 | 10/28/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date?
If none, explain why. I Rode out before the courts wrote me informing me that they have not recieved my mail.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 9-7-16 @ approx 9:35 AM I PROVIDED ARUS HAIRSTON WITH (1) EXPIDITED LEGAL MAIL FORM AND ONE ENVELOPE CONTAINING A MOTION ON HAIRSTON. ARUS HAIRSTON TOLD ME AFTER SEEIN THE MAIL "THIS IS WHY I HATE LITIGATORS IF I SEE THIS AGAIN YOU WONT SEND NO MAIL OUT MAN, AND IM THROWING THIS AWAY." ON 10/28/16 I RECIEVED A LETTER FROM THE COURTS SAYING THEY NEVER RECIEVED THE MAIL. THE FACT THAT HAIRSTON DISCARDED MY MAIL IS IN VIOLATION OF P.D. 05.03.118 PRISONER MAIL PARABRAGH I WHICH SAY "I HAVE TO SEND LEGAL MAIL OUT WITH LOANED FUNDS IF INDIGENT, H, WHICH WAS THE ORIGINAL ISSUE ~~xxxxxxxxx~~ AND R WHICH SAY MY MAIL TO A COURT SHOULDNT BE TAMPERED WITH. P.D. 03.03.130. PARAGRAPH I (6) FOR RETALIATING AGAINST ME FOR FILING THE MOTION K(5) FOR THROWING MY MAIL AWAY AND, M, FOR DISCRIMINATING AGAINST LITIGATORS.

Grievant's Signature

RESPONSE (Grievant Interviewed? ☐ Yes ☒ No    If No, give explanation. If resolved, explain resolution.)

( SEE ATTACHED )

| Respondent's Signature | Date 11/23/16 | Reviewer's Signature | Date 11/28/16 |
|---|---|---|---|
| Respondent's Name (Print) KLIMOWICZ | Working Title ARUM | Reviewer's Name (Print) STEEN | Working Title |

Date Returned to Grievant: 11/29/16   If resolved at Step I, Grievant sign here. Resolution must be described above.

Grievant's Signature

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

DEFENDANT'S EXHIBIT F

# EXHIBIT 1

MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER/PAROLEE GRIEVANCE FORM

4835-4247 10/94
CSJ-247A

Date Received at Step I **9/1/16**   Grievance Identifier: **M R F 1 6 0 9 0 1 7 0 1 0 1 7 B**

Be brief and concise in describing your grievance issue. If you have any question concerning the rights which proceeding refer to PD 03.02.130 and OP 03.02.130 available in the prison law library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Gregory Lee | 791018 | MRF | 7-71T | 8/22/16 | 8/28/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 8/22/16
If none, explain why. On 8/22/16 I told Lt. McWirt that the handcuffs were to tight and that the bottom pair in that cell was not suppose to get transported but were used in it to Frean.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 8/22/16 @ appx. 7:00 AM
C/O FOBRURER Approached me in control center and ask what
type of assault are you going to write. I replied assault on a c/o
Felando. then stated "okay line" I got something special for you. Since
you like to assault c/o's. C/O Furman entered the control center and
proceded to cuff and place restraints. He stated "how you like assaulting a
c/o. Now knowing me and I tried to Lt McWirt about this subject
to the cell. I was ordered and was only fight in self and assault
was in retaliation for both Felando and Furman because of one I
caught 6 months prior. These actions were in Violation of P.D. 03.02.130 I (b)
and I (J), and also 04.05.110 use of        Gregory Lee 8/28/16
force.                                        Grievant's Signature

RESPONSE (Grievant Interviewed?  ☐ Yes  ☑ No   If No, give explanation. If resolved, explain resolution.)

PRISONER  REFUSES  TO  BE INTERVIEWED

| Respondent's Signature | Date 9/30/16 | Reviewer's Signature | Date 9/30/16 |
|---|---|---|---|
| Respondent's Name (Print) | Working Title | Reust, A.  Reviewer's Name (Print) | Working Title |

Date Returned to Grievant **9/30/16**   If resolved at Step I, Grievant sign here. Resolution must be described above.   Grievant's Signature   Date

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

# EXHIBIT 2

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I  9/9/16  Grievance Identifier: MRF 11 6 0A 01 7 3 301 8 A

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| GREGORY LEE | 791018 | MRF | 7-71-T | 9-1-16 | 9-6-16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 9-2-16

If none, explain why. TALKED TO ARUS HARSTON AND ASKED HIM TO REPLACE MY DAYS

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. ACCORDING TO P.D. 03.03.130

SECTION (F) I'M ENTITLED TO AT LEAST ONE HOUR PER DAY, INDOOR, OUTDOOR RECREATION. I'M ON SANCTIONS AND WAS ALLOWED A SEVEN DAY SANCTION BREAK BUT ONLY RECIEVED ONE DAY OF THE 7 DAYS. THIS IS CONSIDERED CRUEL AND UNUSUAL PUNISHMENT TO DENY ME ACCESS TO YARD DOGS. THIS STARTED ON 9-1-2016 UNTIL TODAY'S DATE 9-6-2016.

Grievant's Signature

RESPONSE (Grievant Interviewed? ☑ Yes ☐ No  If No, give explanation. If resolved, explain resolution.)

GRIEVANT HAD THE DAYS IN QUESTION MADE UP. GRIEVANCE IS RESOLVED.

| Respondent's Signature | Date 09/26/16 | Reviewer's Signature | Date 9/27/16 |
|---|---|---|---|
| Respondent's Name (Print) KLIMOWICZ | Working Title ARUM | Reviewer's Name (Print) Steve | Working Title |

Date Returned to Grievant 9/30/16  If resolved at Step I, Grievant sign here.  Grievant's Signature  Date 9/26/16
Resolution must be described above.

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

# EXHIBIT 3



MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I  9/27/16          Grievance Identifier: M R F I 6 0 9 1 8 7 9 0 P

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Gregory Lee | 791018 | MRF | 7-71T | 9/19/16 | 9/19/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _____
If none, explain why. I attempted to talk with Sgt Amalfitano about being harassed by HUT staff on second shift and he told me that he told them to harass me. This was approx 6:00 at the vestibule by the bubble.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 9/19/19 at approx 6:21 I was returning from chow when c/o King and Noble asked me for a shakedown. While being waved with the metal detector Noble told me "You know the lawsuits and grievances don't work here, we run this" and King said "And if you continue to file grievances you'll be on A-Wing for a weapon, we've did it before." I asked them was that a threat and they just laughed. They then searched my underwear and grabbed my genitals asking is this a weapon. This was done in violation of P.D.02.03.109(paragraph 3) OP.02.03.109(paragraph 1) P.D.03.03.130 I(6) _____ And K(4)

Grievant's Signature

RESPONSE (Grievant Interviewed?   ☐ Yes  ☒ No    If No, give explanation. If resolved, explain resolution.)
SEE ATTACHED

Yes - during investigation

| Respondent's Signature | Date 9/28/16 | Reviewer's Signature | Date 10/7/16 |
|---|---|---|---|
| L. McKinney | | Steve | |
| Respondent's Name (Print) | Working Title CCS-3 | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

# EXHIBIT 4

17A

RECEIVED
MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER/PAROLEE GRIEVANCE FORM

4835-4247 10/94
CSJ-247A

Date Received at Step I: 9/26/16 SD    Grievance Identifier: MRF 16 09 91 85 20 17A

GRIEVANCE DEPARTMENT

Be brief and concrete in describing your grievance issue. If you have any questions concerning the grievance procedures, see PD 03.02.130 and OP 03.02.130 available in the prisoner law library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Gregory Lee | 791018 | MRF | 7-22 B | 9/19/16 | 9/20/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date?
If none, explain why. While in A-Wing Shower I told Sgt Amalfitano that the c/o's told me they we're going to put ~~them three~~ the knife in my property so I could be placed on A-Wing, before the incident occured and he told me he told them to tell me

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 9/19/2016 @ approx. 6:3& I was removed from my cell and placed in A-Wing shower, I was told by C/o King "told you we could make it happen" Approx 10 min. later Sgt Amalfitano approached me saying "look what we found" and Noble showed me a really sharp piece of metal, I told the Sgt "thats not mine" and he replied "it is now." This is in violation of I.D. 02.0: 130 (d)(b),P.D. 03.03.130 I (6),K(4). I was told an action was going to take place beforehand which later actually happened. This was a premeditated deliberate retalitory act against me by all ~~of the~~ individuals named above with no penslogical explaination

Grievant's Signature

RESPONSE (Grievant Interviewed? ☑ Yes ☐ No    If No, give explanation. If resolved, explain resolution.)

( SEE ATTACHED )

| Respondent's Signature | | Reviewer's Signature | |
|---|---|---|---|
| KLIMOWICZ | 10/17/16 | SD | 10/24/16 |
| Respondent's Name (Print) | Date | Steele | |
| | ARUM | Reviewer's Name (Print) | |
| | Working Title | | Working Title |

Date Returned to Grievant: 10/24/16    If resolved at Step I, Grievant sign here. Resolution must be described above.

Grievant's Signature    Date

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

# EXHIBIT 12

Exhibit E

On 9-19-16   Prisoner Lee was call for a shake down and I heard officer Noble say to Lee why do you write Grievances, they don't work we meaning C/O's run this. As Lee walk away Noble state Don't end up on A-wing for possession of a weapon.

I, Steve Smith, under Penalty of Perjury Pursuant to 28 USC 51746 verify that the above is true and correct to the best of my belief knowledge and understanding

Steve Smith #3964

# EXHIBIT 18

| MICHIGAN DEPARTMENT OF CORRECTIONS<br>**POLICY DIRECTIVE** | EFFECTIVE DATE<br>04/24/2017 | NUMBER<br>03.03.140 |
|---|---|---|
| SUBJECT<br>PRISON RAPE ELIMINATION ACT (PREA) AND PROHIBITED SEXUAL CONDUCT INVOLVING PRISONERS | SUPERSEDES<br>03.03.140 (09/15/2015); DOM 2017-23 | |
| | AUTHORITY<br>MCL 750.145m; MCL 750.520c; MCL 791.203; MCL 791.204; 42 USCA 15601 et. seq.; Prison Rape Elimination Act (PREA) of 2003 | |
| | PAGE    1    OF    10 | |

**POLICY STATEMENT:**

The Department has a zero tolerance standard for sexual abuse between or among prisoners. The Department also has a zero tolerance for staff sexual misconduct, staff sexual harassment, and staff overfamiliarity with prisoners.

**RELATED POLICIES:**

| | |
|---|---|
| 01.01.140 | Internal Affairs |
| 02.03.100 | Employee Discipline |
| 03.03.105 | Prisoner Discipline |
| 03.03.110 | Special Problem Offender Notice |
| 03.03.130 | Humane Treatment and Living Conditions for Prisoners |
| 04.05.120 | Segregation Standards |

**POLICY:**

<u>DEFINITIONS</u>

A. The definitions in Paragraphs B - H only apply to this policy.

B. <u>Employee</u> - For purposes of this policy only, Employee refers to Michigan Department of Corrections (MDOC) employees, contractors, and volunteers.

C. <u>Prisoner</u> - For purposes of this policy, "prisoner" includes probationers in the Special Alternative Incarceration Program (SAI) and parolees residing in a Reentry facility unless otherwise stated.

D. <u>Prisoner-on-Prisoner Sexual Abuse</u> - Sexual abuse of a prisoner by another prisoner includes any of the following acts if the victim is not a willing participant, or is coerced into such act(s) by overt or implied threats of violence.

    1. Non-consensual sexual acts:

        a. Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

        b. Contact between the mouth and the penis, vulva or anus;

        c. Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object or other instrument; and

    2. Abusive sexual contact:

        a. Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh or the buttocks of another person, excluding contact incidental to a physical altercation.

E. <u>Prisoner-on-Prisoner Sexual Harassment</u> - Includes repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one prisoner directed toward another prisoner.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | | |
|---|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE 2 OF 10 | |

F.   Staff Overfamiliarity - Conduct between an employee and a prisoner which has resulted in or is likely to result in intimacy, including but not limited to a kiss or a hug, or a close personal or non-work related association.

G.   Staff-on-Prisoner Sexual Harassment - Includes repeated verbal comments, written statements, or gestures of a sexual nature to a prisoner by an employee, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing and profane or obscene language or gestures.

H.   Staff-on-Prisoner Sexual Misconduct (Under Prison Rape Elimination Act [PREA] guidelines this is also referred to as staff-on-prisoner sexual abuse). - Sexual Abuse of a prisoner by an employee, including any of the following acts, willing or unwilling on the part of the prisoner:

1.   An attempted, threatened, or requested sexual act or helping, advising, or encouraging another employee to engage in a sexual act.  This does not include acts related to official duties (e.g., strip searches, pat down searches, chest compressions during CPR, etc.).

2.   Contact between the penis and the vulva or the penis and the anus, including penetration, however slight.

3.   Contact between the mouth and the penis, vulva or anus.

4.   Contact between the mouth and any body part where the employee has the intent to abuse, arouse or gratify sexual desire.

5.   Penetration of the anal or genital opening, however slight, by a hand, finger, object or other instrument, that is unrelated to official duties or where the employee has the intent to abuse, arouse or gratify sexual desire.

6.   Any other intentional contact, either directly or through clothing, of or with the genitals, anus, groin, breast, inner thigh, or buttocks that is unrelated to official duties or where the employee has the intent to abuse, arouse, or gratify the sexual desire of any person.

7.   Any attempt, threat or request by an employee to engage in the activities described above.

8.   Any display by an employee of his or her uncovered genitalia, buttocks or breast in the presence of a prisoner.

9.   Invasion of privacy for sexual gratification or voyeurism.

GENERAL INFORMATION

I.   The Department has a zero tolerance standard for sexual abuse between or among prisoners.  The Prison Rape Elimination Act (PREA) addresses prisoner-on-prisoner sexual abuse, staff sexual misconduct, and staff sexual harassment in correctional facilities.  PREA specifically provides for the analysis of the incident and effects of such conduct and requires the issuance of national standards to address sexual abuse in a correctional setting.  The PREA Manager, Budget and Operations Administration (BOA), shall be responsible for reporting statistical information and other data as required under the Act and for oversight of the Department's compliance with the national standards when issued.  The PREA Manager also is responsible for monitoring compliance with this policy.

J.   The PREA Manager oversees and coordinates the efforts of the MDOC to comply with Federal PREA standards including development and implementation of policy, and maintains a PREA Manual which shall be reviewed and updated as needed.   The manual shall be consistent with PREA standards and outline methods consistent with maintaining PREA compliance.

K.   This policy does not apply to probationers and parolees who are being supervised in the community except as set forth in Paragraph U. However, staff sexual misconduct/sexual harassment and staff

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE 3 OF 10 |

overfamiliarity involving these offenders also is prohibited and shall be reported and investigated as set forth in PD 01.01.140 "Internal Affairs" and PD 02.03.100 "Employee Discipline."

L.    Allegations of prisoner sexual assaults against staff shall be reported to the Michigan State Police (MSP) or other appropriate law enforcement agency for investigation. A prisoner in a Correctional Facilities Administration (CFA) facility also shall be subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline," and as appropriate, reclassification to a higher security level, including segregation, in accordance with PD 05.01.130 "Prisoner Security Classification" and PD 04.05.120 "Segregation Standards."

M.    Wardens shall designate a PREA Coordinator at each facility under his/her supervision. The PREA Coordinator shall have sufficient time and authority to coordinate the facility's efforts to comply with the standards outlined in the PREA Manual. The PREA Coordinator shall be responsible for monitoring and providing assistance regarding all aspects of PREA compliance in areas such as training, education, reporting, documentation and investigation of PREA-related allegations.

N.    To ensure compliance with standards developed by the National Prison Rape Elimination Commission, audits will be conducted by approved auditors in accordance with the Department of Justice (DOJ) PREA Audit Instrument.

O.    For facilities housing male offenders, female staff must announce their presence each time they enter a prisoner housing unit. Staff must knock on the most interior door and announce in a loud clear voice, "female(s) in the area" and wait 10 seconds before entering.

P.    For facilities housing female offenders, male staff must announce their presence each time they enter a prisoner housing unit. Staff must knock on the most interior door and announce in a loud clear voice, "male(s) in the area" and wait 10 seconds before entering. Also, at facilities housing female offenders, staff shall follow procedures outlined in WHV OP 03.03.140 "Prohibited Sexual Conduct Involving Prisoners" and SAI OP 03.03.140 "Prohibited Sexual Conduct Involving Trainees (PREA)."

RISK ASSESSMENTS

Q.    All prisoners shall be assessed during an intake screening and upon transfer to another facility for their risk of being sexually abused by other prisoners or being sexually abusive toward other prisoners. The OMNI-based risk assessment tools will be used to determine a prisoner's risk. The results of the risk assessment shall be considered when making housing, bed, work, education, and program assignments with the goal of keeping separate those prisoners at high risk of being sexually victimized from those at high risk of being sexually abusive. Staff shall complete a PREA-Aggressor Risk Assessment-Prison and a PREA-Victim Risk Assessment-Prison in accordance with the PREA Risk Assessment Manual. Staff designated by the Warden shall complete both PREA Risk Assessments if any of the following occur:

    1.    Within 72 hours of a prisoner's arrival at a correctional facility, including intake.

    2.    Whenever warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that may increase the prisoner's risk of being sexually abused by other prisoners or being sexually abusive toward other prisoners.

R.    In addition to the PREA Risk Assessments required in Paragraph Q, staff designated by the Warden shall complete a PREA-Risk Assessment Review-Prison if any of the following occur:

    1.    Within 30 calendar days of a prisoner's arrival at a correctional facility, including intake.

    2.    It has been 12 months since the last review.

PROHIBITED CONDUCT

S.    Prisoners are prohibited from having any sexual contact with another prisoner. A prisoner in a CFA facility who willingly engages in such behavior is subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline" and, as appropriate, reclassification to a higher security level, including segregation,

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE  4  OF  10 |

in accordance with PD 05.01.130 "Prisoner Security Classification" and PD 04.05.120 "Segregation Standards." A Special Problem Offender Notice (SPON) shall be issued, as appropriate, as set forth in PD 03.03.110 "Special Problem Offender Notice." Parolees residing in a Reentry facility are subject to parole revocation in accordance with PD 06.06.100 "Parole Violation Process." Probationers in SAI are subject to termination from that program and may be returned to the jurisdiction of the sentencing court.

T.     Staff sexual harassment/sexual misconduct and staff overfamiliarity are violations of Department work rules. Staff that engage in such conduct are subject to disciplinary action pursuant to PD 02.03.100 "Employee Discipline." It also is a felony for staff to engage in sexual contact with a prisoner, as defined in MCL 750.520c.

U.     It is a felony for a contractual employee or a volunteer to engage in sexual contact with an offender, as defined in MCL 750.520c. A contractual employee or volunteer who engages in such behavior shall be prohibited from providing services within any Department correctional facility. In addition, a parolee or a probationer shall not be required to receive services from a contractual employee or volunteer in the community known to have engaged in such conduct. If such contact is reported by a parolee or probationer, the supervising agent shall ensure that the parolee or probationer is not required to have any further contact with the individual pending investigation of the matter. The supervising agent also shall immediately notify the Deputy Director of Field Operations Administration (FOA) or designee of the matter through the appropriate chain of command. The FOA Deputy Director or designee shall ensure a prompt investigation is conducted to verify whether the contractual employee or volunteer was found to have engaged in such conduct and, if verified, take appropriate action to ensure the individual no longer provides services to probationers or parolees.

V.     All prisoners and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations are protected from retaliation for reporting the incident or participating in the investigation.

## CONFIDENTIALITY OF REPORTS AND INVESTIGATIONS

W.     Reasonable steps shall be taken to ensure the confidentiality of information obtained during the risk assessment process and from reports of conduct prohibited by this policy and any resulting investigations. Persons interviewed as part of an investigation shall be specifically warned not to discuss the investigation with others. Staff that intentionally compromise this confidentiality shall be subject to discipline in accordance with PD 02.03.100 "Employee Discipline." Prisoners in a CFA facility who intentionally compromise this confidentiality shall be subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline." This does not preclude staff from discussing such matters with their attorneys or in accordance with this or any other policy directive, Civil Service Commission rules and regulations, or applicable collective bargaining unit agreements. This also does not preclude prisoners from discussing such matters with their attorneys, to seek treatment, or to ensure their own safety. The PREA Manager shall share with the facility head and his/her supervisors, as appropriate, allegations of conduct prohibited by this policy, which are received directly by the PREA Section.

## REPORTING PROHIBITED CONDUCT

X.     Employees shall immediately report any knowledge, suspicion or information regarding allegations of conduct prohibited by this policy to appropriate supervisory staff. Reports shall be taken regardless of when the incident was alleged to have occurred. Reports may be made privately to appropriate supervisory staff, through the MDOC Sexual Abuse Hotline, by completing a Department Sexual Abuse/Sexual Harassment Complaint form on the MDOC website, by contacting the PREA Manager or by contacting the Department's Internal Affairs Division. If the allegations pertain to conduct at another facility (including county jails, another state prison, federal prison or substance abuse program facility), the Warden shall provide email notification within 72 hours as follows:

1.     For allegations of sexual abuse within the MDOC - To the appropriate facility head. The Inter-Administration Investigation Protocol issued by the CFA and FOA Deputy Directors shall be followed if the allegation is regarding the conduct of an employee from another Administration. The appropriate facility head shall verify whether the allegation had been previously investigated. If not, s/he shall ensure the allegation is entered into the Department's computerized database and investigated in a timely manner. A courtesy copy shall be forwarded to the Department's

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>04/24/2017 | NUMBER<br>03.03.140 | PAGE 5 OF 10 |
|---|---|---|---|

PREA Manager.

2.    For allegations of sexual abuse which occurred outside the MDOC - To the third party facility or local law enforcement where the incident was alleged to have occurred.

Y.    Prisoners may report allegations of conduct prohibited by this policy, including threats of such conduct and retaliation for reporting such conduct, verbally or in writing to any Department employee, through the MDOC Sexual Abuse Hotline, through the PREA grievance process as outlined in this policy, through the Legislative Corrections Ombudsman, or through a third party. If reported verbally to an employee, the employee shall document it in writing as soon as possible and report it to appropriate supervisory staff. When receiving any report of sexual abuse or sexual harassment, regardless of the source, staff shall promptly document and forward the complaint to the appropriate supervisory staff for investigation.

Z.    Prisoners in a CFA facility who report that they have been the victim of a prisoner-on-prisoner sexual abuse or staff sexual misconduct shall be referred to the Bureau of Health Care Services (BHCS) for examination, evidence collection, and treatment. They also shall be referred to BHCS mental health services staff for assessment, counseling, and other necessary mental health services consistent with the requirements set forth in PD 04.06.180 "Mental Health Services." Parolees in a Reentry facility who report that they have been the victim of a prisoner-on-prisoner non-consensual sexual act or staff sexual misconduct shall be permitted to speak with a counselor available in the local community, if requested.

AA.    Prisoners in a CFA facility who make accusations of misconduct against employees, including for staff sexual misconduct/sexual harassment or staff overfamiliarity, which after investigation are determined to be unfounded may be charged with the misconduct of "Interference with the Administration of Rules," with approval of the Warden or designee. The misconduct may be elevated to Class I with the approval of the CFA Deputy Director or designee. Hearings shall be conducted in accordance with PD 03.03.105 "Prisoner Discipline."

BB.    Medical and mental health staff shall obtain informed consent from prisoners before reporting information about prior sexual victimization that did **not** occur in an institutional setting. A PREA Authorization for Release of Information Form (CAJ-1028) shall be used for this purpose. A copy of the CAJ-1028 shall be retained for auditing purposes.

CC.    Employees who are Health Care and Mental Health practitioners are required to report allegations of sexual abuse that occurred in an institutional setting, whether or not the institution is part of the Department. The practitioner shall inform the prisoner of the practitioner's duty to report and that confidentiality is limited.

DD.    The facility shall report any allegations of alleged victims under the age of 18 or who are considered a vulnerable adult under a state or local vulnerable persons statue to the PREA Manager. After the PREA Manager receives the reported allegations, s/he will forward the allegations to the appropriate agencies, to the extent the law requires such reporting.

PREA GRIEVANCES

EE.    The PREA Grievance process is a two-step process allowing prisoners to grieve regarding allegations of sexual abuse. A prisoner may file a PREA Grievance at Step I, and may appeal the Step I decision to Step II. The Step II decision shall serve as the Department's final decision on the merits of the PREA Grievance. Issues filed by prisoners regarding sexual abuse, as defined in this policy, serve to exhaust the prisoner's administrative remedies only when filed through both steps of the PREA grievance process. PREA Grievances alleging sexual abuse shall not be denied or rejected.

FF.    Prisoners shall use the PREA Prisoner Grievance Form (Step I) (CAJ-1038A) to file a PREA Grievance. The form may be completed by hand or typewritten. However, handwriting must be legible. The issues should be stated briefly but concisely. Information provided should be limited to the facts involving the issues being grieved (i.e., who, what, when, where, why and how). Dates, times, places and names of all those involved should be included. Information should be confined to the form and not written on the back, sides or margins of the form, or in the area provided for a response. Additional pages may be attached to the grievance form if necessary to provide required information. If additional pages are necessary, the prisoner must submit four copies of each additional page.

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>04/24/2017 | NUMBER<br>03.03.140 | PAGE 6 OF 10 |
|---|---|---|---|

GG. A prisoner may file a PREA grievance at any time by submitting a completed CAJ-1038A to the appropriate staff, as identified by the warden, of the institution at which the prisoner is housed. Prisoners are not required to use any informal grievance process, or to otherwise attempt to resolve with staff an alleged incident of sexual abuse.

HH. Staff shall log and assign a unique identifying number (facility code – year – month - AIM number - PREA) to each Step I PREA grievance received. The unique identifying number shall consist of the AIM number assigned to the investigation resulting from the grievance. If the grievance does not result in an investigation and subsequent AIM number, staff shall use a unique identification number (i.e., 00001,00002, etc.) in place of the AIM number. If any facility staff receives a PREA Grievance, the PREA Grievance shall be immediately forwarded to the appropriate facility staff, as identified by the Warden, to respond to the PREA grievance. Additionally, all allegations of sexual abuse not previously investigated shall be referred for investigation as set forth in PD 01.01.140 "Internal Affairs" and this policy.

II. Any PREA Grievance containing issues other than sexual abuse shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with PD 03.02.130 "Prisoner/Parolee Grievances." Any PREA grievance containing multiple issues, which include sexual abuse and non-sexual abuse issues, shall be processed in accordance with this policy in order to address the allegations of sexual abuse only. The prisoner shall be notified in the PREA Grievance response that s/he must submit a new grievance in accordance with PD 03.02.130 to address any concerns not related to sexual abuse.

JJ. Prisoners shall not be required to submit a PREA grievance to a staff member who is the subject of the complaint, nor shall a PREA grievance be referred to a staff member who is the subject of the complaint.

KK. The PREA Coordinator shall ensure a written response is provided to the prisoner within 60 calendar days of receipt of the Step I PREA Grievance, absent an extension. The facility may claim an extension, not to exceed an additional 70 calendar days, if the normal time period for response is insufficient to make an appropriate decision regarding the grievance. If an extension is taken, the facility shall notify the prisoner in writing of the extension and a date by which a decision will be made.

LL. Prisoners may appeal a Step I decision to Step II if s/he is dissatisfied with the Step I response or did not receive a Step I response in a timely manner. The Step II response shall be the Department's final decision regarding the matter. The Step II response shall be issued within 90 calendar days of receipt of the Step I PREA Grievance, absent an extension. The time consumed by the prisoner to prepare his/her appeal shall not be included in the time limits listed above.

MM. Third parties, including fellow prisoners, staff members, family members, attorneys, and outside advocates, shall be permitted to assist prisoners in filing PREA grievances related to sexual abuse, and shall be permitted to file such grievances on the prisoner's behalf.

NN. If a PREA Grievance alleging sexual abuse is filed by a third party on behalf of a prisoner, the alleged victim must sign the PREA Grievance authorizing the grievance to be filed on his/her behalf. Failure to sign the grievance will result in the grievance being immediately dismissed. All Department responses to grievances filed by a third party shall be provided to the prisoner on whose behalf the grievance was filed. Any issues other than sexual abuse addressed in third party grievances shall be denied in accordance with this policy.

OO. If a prisoner has reasonable belief s/he is subject to a substantial risk of imminent sexual abuse, s/he may file an Emergency PREA Grievance in order to seek protection from the imminent risk. The PREA Grievance filed must clearly indicate the grievance is an Emergency PREA Grievance and state in a clear and concise manner what the prisoner believes to be an imminent risk.

PP. Upon receipt of an Emergency PREA Grievance, staff shall forward the grievance to the Warden, or designee, in order for immediate corrective action to be taken, if appropriate, to protect the prisoner from sexual abuse. The Warden, or designee, shall provide an initial response within 48 hours addressing the prisoner's claim regarding imminent risk and whether emergent action is necessary. The facility's initial response shall be immediately forwarded to the PREA Manager who will provide the Department's final

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE  7  OF  10 |

decision regarding the prisoner's claim of imminent risk.  The PREA Manager will provide the decision within five calendar days of the submission of the grievance.  The facility's response and the agency's final decision shall document whether the prisoner is in substantial risk of imminent sexual abuse and if any emergent action was necessary.

QQ.    If a prisoner makes false allegations of sexual abuse on a PREA grievance which is investigated and determined to be no evidence/unfounded, the prisoner may be disciplined in accordance with PD 03.03.105 "Prisoner Discipline" and this policy.

<u>INVESTIGATION OF SEXUAL ABUSE/SEXUAL HARASSMENT</u>

RR.    Investigations of sexual abuse/sexual harassment shall be completed by staff who have received specialized investigator training as outlined in the PREA Manual.  All investigations shall be conducted promptly, thoroughly and objectively.  All PREA investigations shall be conducted in accordance with the Sexual Abuse/Sexual Harassment Investigations portion of the PREA Manual.

SS.    Facility staff shall work to avoid transferring prisoners if they are the alleged victim, perpetrator, or witness in a pending PREA related investigation.  If a prisoner is transferred prior to the completion of an investigation, the facility shall document the rationale for the transfer.

TT.    Staff who are accused of, witnessed, or have personal knowledge of conduct prohibited by this policy and refuse to cooperate with an investigation shall be subject to discipline, in accordance with PD 02.03.100 "Employee Discipline."

UU.    The Warden or Lake County Residential Reentry Program (LCRRP) Manager, as appropriate, shall ensure the victim is notified in writing of the final disposition of an investigation involving allegations of sexual abuse.  The PREA Prisoner Notification of Sexual Abuse Investigative Findings and Action Form (CAJ-1021) shall be used for this purpose.  The CAJ-1021 shall be retained as part of the investigative packet.

VV.    Following an allegation that a staff member committed sexual abuse against a prisoner, the facility conducting the investigation shall inform the prisoner unless the investigation determines the allegation was unfounded, whenever:

1.    Any disciplinary action is taken.  However, details of the discipline, including specific charges and sanctions shall not be provided;

2.    The staff member is no longer assigned within the prisoner's unit;

3.    The staff member is no longer employed at the facility;

4.    The Department learns the staff member has been indicted on a charge related to sexual abuse within the facility, or;

5.    The Department learns that the staff member has been convicted on a charge related to sexual abuse within the facility.

WW.    Following allegations that a prisoner was sexually abused by another prisoner, the Department shall subsequently inform the alleged victim whenever:

1.    The Department learns the alleged abuser has been indicted on a charge related to sexual abuse within the facility, or;

2.    The Department learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility.

XX.    Wardens and the LCRRP Manager shall ensure that information on all allegations of prisoner-on-prisoner sexual abuse, staff sexual misconduct/sexual harassment, and staff overfamiliarity are entered into the MDOC computerized database at their respective facilities and investigated.  In addition, information on

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE  8  OF  10 |

the outcome of each investigation shall be entered.  Information on allegations that do not result in sustained rule violations shall not be retained in an employee's Personnel file or used for any purpose not authorized by this or any other policy directive.  Only the  Deputy Director and his/her staff involved in employee disciplinary proceedings, including the Internal Affairs Division, the PREA Manager and his/her staff, and other staff specifically authorized by the Director or designee, shall have access to information in AIM.

YY.   For each investigation which sustains an allegation of prisoner-on-prisoner sexual abuse, and for each investigation which results in sustained disciplinary charges for staff sexual misconduct/sexual harassment, staff designated by the Warden shall ensure that a completed United States Department of Justice Survey on Sexual Violence Form (SSV-IA) is sent to the PREA Manager along with any other documentation as requested by the PREA Manager.  If the case involves only an allegation of staff overfamiliarity, documentation shall be provided as requested by the PREA Manager or designee.

Prisoner-on-Prisoner Sexual Abuse

ZZ.   All reported allegations of prisoner-on-prisoner sexual abuse or threats of such behavior, whether reported verbally or in writing, shall be referred to the Warden or designee, or in FOA, to the Administrator of the Office of Parole and Probation Services or designee, for investigation.  The assigned investigator shall personally interview the alleged victim, the alleged perpetrator, and sufficient witnesses to establish the facts, unless otherwise directed by the investigating law enforcement agency.  The investigation shall be coordinated as necessary with the Hearing Investigator if misconduct charges are issued.

AAA.   Any allegation(s) that appear to be criminal shall be referred to the MSP or other appropriate law enforcement agency to be criminally investigated and referred for prosecution.  The Department investigation shall be coordinated as necessary with the investigating law enforcement agency to ensure the Department's efforts will not be an obstacle for prosecution.  However, the Department investigation shall proceed with PD 01.01.140 "Internal Affairs" and regardless of whether the referral results in criminal prosecution.

Staff Sexual Misconduct/Harassment and Staff Overfamiliarity

BBB.   All reported allegations of staff sexual misconduct/sexual harassment or staff overfamiliarity, whether reported verbally or in writing, shall be referred for investigation as set forth in PD 02.03.100 "Employee Discipline" or PD 01.01.140 "Internal Affairs," as appropriate.  Any allegation(s) that appear to be criminal shall be referred to the MSP or other appropriate law enforcement agency to be criminally investigated and referred for prosecution.  The Department investigation shall be coordinated as necessary with the investigating law enforcement agency to ensure the Department's efforts will not be an obstacle for prosecution.  However, the Department investigation shall proceed in accordance with PD 01.01.140 "Internal Affairs" and PD 02.03.100 "Employee Discipline" regardless of whether the referral results in criminal prosecution.

CCC.   In all investigations of staff sexual misconduct/sexual harassment or staff overfamiliarity, investigators shall personally interview the complainant, the alleged victim if not the complainant, the alleged perpetrator, and sufficient witnesses to establish the facts.  The investigation shall not be closed simply due to the resignation, transfer, or termination of the accused staff person.

ADDITIONAL MEASURES TO MINIMIZE PROHIBITED CONDUCT

DDD.   The Administrator of the Training Division, BOA, shall ensure both new employee and in-service training is available to staff regarding conduct prohibited by this policy. In addition, the Administrator of the Training Division shall ensure that training is available on how to conduct investigations under this policy. Staff, including investigators and facility administrators, shall attend training as required.

EEE.   The PREA Manager shall ensure standardized educational material to educate prisoners regarding conduct prohibited by this policy, self-protection, how to report conduct or threats of conduct prohibited by this policy, and treatment and counseling is accessible to all prisoners.  Educational materials shall be available to all prisoners, including any updates, in CFA and Reentry facilities and shall be incorporated into facility orientation programs.  If needed, the Department will seek the assistance of interpreters for prisoners with disabilities or limited English proficiency.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | | |
|---|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE 9 OF 10 | |

FFF. Each Warden shall take reasonable measures to eliminate prisoner access to secluded areas of the facility. This includes conducting rounds of such areas as set forth in PD 04.04.100 "Custody, Security, and Safety Systems."

GGG. Each Warden shall ensure the facility's physical plant layout enables prisoners to shower, perform bodily functions and change clothing without nonmedical staff of the opposite gender viewing the prisoner's breasts, buttocks or genitalia except in exigent circumstances or when such viewing is incidental to routine cell checks. Instances of cross-gender viewing in exigent circumstances shall be documented in writing to the Warden and retained for the PREA Audit.

Identification/Counseling of Prisoners with Histories of Sexual Victimization or Sexually Aggressive Behavior

HHH. Prisoners received at a reception facility who have been convicted of or identified as having a history of a predatory or assaultive sexual offense shall be interviewed by a Qualified Mental Health Professional or other appropriate staff as set forth in PD 04.01.105 "Reception Facility Services." Prisoners identified as having a history of physical or sexual abuse, or who pose a reasonable concern that they may be sexually victimized while incarcerated due to age, physical stature, history, or physical or mental disabilities shall be similarly referred as set forth in PD 04.01.105.

III. Prisoners with a history of sexually aggressive behavior, or who are found guilty of sexually aggressive behavior while incarcerated, shall be referred to BHCS mental health services staff for assessment, counseling, and other necessary mental health services, as appropriate, consistent with the requirements set forth in PD 04.06.180 "Mental Health Services." Prisoners who are reasonably believed to be at risk of sexual victimization while incarcerated, or who have been sexually assaulted while incarcerated, shall similarly be referred.

Placement of Prisoner With History of Sexually Aggressive Behavior Involving a Victim of the Same Sex

JJJ. With approval of the CFA Assistant Deputy Director (ADD) of the Operations Division or designee, a prisoner identified at a reception facility as having used force or the threat of force to engage in, or attempt to engage in, abusive sexual contact or a non-consensual sexual act with a victim of the same sex shall be placed only in single-cell housing only in a Level IV or V facility in accordance with PD 04.01.105 "Reception Facility Services" to reduce the potential assault risk to other prisoners. Similarly, if a prisoner is found guilty of misconduct for using force or the threat of force to engage in, or attempt to engage in, abusive sexual contact or a non-consensual sexual act with a victim of the same sex while incarcerated in a CFA facility, the prisoner shall be placed only in single-cell housing in a Level IV or V facility unless the Warden believes that such placement is not necessary and the CFA ADD of Operations or designee approves alternative placement.

KKK. Whenever it is determined that a prisoner may be placed only in single-cell housing in a Level IV or V facility, the prisoner's continuing need for such placement shall be reassessed whenever s/he is screened for security classification pursuant to PD 05.01.130 "Prisoner Security Classification," the original reason for the placement and the prisoner's conduct since the original incident that led to the placement shall be taken into consideration. If it is believed that the prisoner may no longer require such placement, the case shall be referred to the Warden for review. If the Warden agrees that the prisoner may no longer require such placement, the case shall be referred to the CFA ADD of or designee for a final determination. In all circumstances, however, the case shall be referred to the CFA ADD of Operations or designee for review at least every five years after the initial placement decision was made.

LLL. The CFA Deputy Director may require that a prisoner who has used force or the threat of force to commit or attempt to commit a non-consensual sexual act involving a victim of the same sex be placed only in single-cell housing in a Level IV or V facility, or allow alternative placement, on his/her own initiative.

VICTIM ADVOCATES

MMM. The Department shall attempt to make available a victim advocate from rape crisis centers, which are not part of the criminal justice system, that provide counseling and confidentiality to prisoner victims. If a victim advocate from a rape crisis center is not available to provide victim advocate services, the facility

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 04/24/2017 | 03.03.140 | PAGE 10 OF 10 |

shall make available to the prisoner a properly trained advocate from:

1. The hospital at which the prisoner will be transported for sexual abuse treatment,

2. The facility's medical and/or mental health staff,

3. On-shift facility staff who have agreed to be a victim advocate,

4. Off-shift facility staff who have agreed to be a victim advocate.

NNN. The Department shall provide prisoner victims with access to outside victim advocates for emotional support services related to sexual abuse if available.

PROCEDURES

OOO. The FOA Deputy Director and Wardens shall ensure that procedures are developed within 60 days after the effective date of this policy.

APPROVED: HEW 03/07/2017

```
 1                        I N D E X

 2
     WITNESSES FOR THE PLAINTIFF:                        PAGE
 3
     STEVE CAPRICE SMITH
 4     Direct Examination By Ms. Geibel                    95
       Cross-Examination By Mr. Dean                      111
 5     Redirect Examination By Ms. Geibel                 113

 6

 7   WITNESSES FOR THE DEFENDANT:

 8   GREGORY LEE
       Direct Examination By Mr. Dean                       5
 9     Cross-Examination By Mr. Schaedig                   18
       Redirect Examination By Mr. Dean                    38
10     Recross-Examination By Mr. Schaedig                 41

11   GABRIEL NOBLE
       Direct Examination By Mr. Dean                      42
12     Cross-Examination By Ms. Geibel                     47

13   VINCENT AMALFITANO
       Direct Examination By Mr. Dean                      77
14     Cross-Examination By Ms. Murray                     79

15   NICHOLAS KING
       Direct Examination By Mr. Dean                      87
16     Cross-Examination By Ms. Murray                     89

17

18   EXHIBITS:                                           RCVD

19     DX A     Misconduct Report                          13
       DX D     Step 3 Grievance                           14
20     DX E     Grievance                                  16
       DX F     Grievance                                  19
21     PX 1     Grievance                                  33
       PX 2     Grievance                                  23
22     PX 3     Grievance                                  26
       PX 4     Grievance                                  28
23     PX 12    Statement of Steve Smith                  115
       PX 18    PREA Policy Directive                      30
24

25
```